IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS


AGCS MARINE INSURANCE COMPANY and
INTERCHANGE GROUP, INC.,

       Plaintiffs,

v.                                    Civ. Action No. 2:18-cv-120
                                              (Judge Kleeh)

BILL WARNER & SON TOWING &
RECOVERY, LLC,

       Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 11]

Pending before the Court is a Motion to Dismiss filed by Defendant Bill Warner & Son Towing & Recovery, LLC. The motion is fully briefed and ripe for review. For the reasons listed below, the Court **GRANTS** the motion.

### I.    BACKGROUND

On November 21, 2018, the Plaintiffs, AGCS Marine Insurance Company ("AGCS") and Interchange Group, Inc. ("Interchange") (together, "Plaintiffs"), filed suit against the Defendant, Bill Warner & Son Towing & Recovery, LLC ("Defendant"). In the Amended Complaint, Plaintiffs aver the following set of facts, which are regarded as true for purposes of the Motion to Dismiss.

AGCS issued an inland marine insurance policy to Interchange. Am. Compl. at ¶ 8. The policy insured cargo that Interchange was transporting via tractor/trailer. ¶¶ 8-9. On July 28, 2018, a

driver for Interchange lost control of the tractor/trailer near Seneca Rocks, West Virginia, and rolled down an embankment. ¶¶ 10–11. Defendant was then dispatched to recover the tractor/trailer and provide clean-up services. ¶ 14. Following the incident, Defendant submitted an invoice to Interchange totaling $242,432.40 for seven (7) days of services. ¶ 15. The invoice broke down the expenses into two categories: (1) recovery of the tractor/trailer at $65,113.50 and (2) clean-up and debris removal at $177,318.90. ¶ 16.

Plaintiffs dispute the necessity of the services Defendant provided, the amount of labor it employed, and the reasonableness of the clean-up and debris removal charges. ¶ 17. Plaintiffs retained an expert to review the invoice, and the expert found that the reasonable charges for clean-up would amount to $76,417.62. ¶¶ 22–23. Plaintiffs argue the following actions were unreasonable: use of and amount charged for a wrecker; payment of $50 per hour to flaggers; payment of $50 per hour to laborers; payment of $80 per bag for super sacs; and charging for a fork lift, leaf blower, and chop saw. ¶¶ 24–32. Plaintiffs also argue that photographs do not support the number of laborers for which Defendant billed. ¶ 28. Defendant refuses to provide Plaintiffs with any documentation such as time sheets or pay stubs demonstrating payment to the laborers. ¶ 29.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 11]

Plaintiffs assert one count of declaratory relief and ask the Court to do the following: determine that Plaintiffs are not obligated to make payment to Defendant in connection with the clean-up and debris removal for the subject loss beyond the fair and reasonable expenses; determine the amount of the fair and reasonable expenses; award Plaintiffs their costs and attorney's fees; and award Plaintiffs any other relief as justice may require. Am. Compl. at 5.

## II.   GOVERNING LAW

### A.   Declaratory Judgments

Under the Federal Declaratory Judgment Act, district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have "great latitude" in their discretion to determine whether and when to entertain an action under the Act. Aetna Cas & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 421–22 (4th Cir. 1998). The Fourth Circuit has explained that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325

(4th Cir. 1937). It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256–57 (4th Cir. 1996). The statute's aim "is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." Quarles, 92 F.2d at 324.

The Supreme Court of the United States has instructed that when a related state proceeding is underway, a district court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942). The Fourth Circuit has written that a district court should consider certain factors, along with general principles of federalism, efficiency, and comity, in deciding whether to exercise jurisdiction over state-law claims in the face of parallel litigation in the state courts:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"; and

(iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing" – that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

Poston, 88 F.3d at 257.

The Fourth Circuit has interpreted United States Supreme Court precedent as standing for the proposition that "at least where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." Id. The Poston court indicated that if "the relevant state law is not problematic or difficult to apply," it "weakens somewhat the state's interest in having those issues decided in state court." Id. at 258.

Although the factors in the Fourth Circuit's test focus on interaction between parallel state and federal actions, a pending state action is not a requirement for dismissal. Ind-Com Elec. Co., 139 F.3d at 423 (citing Golden Eagle Ins. Co. v. Travelers

Companies, 103 F.3d 750, 754 (9th Cir. 1996) (noting "the absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice.") (citations omitted)). It is one relevant consideration, and a district court's discretion is not abused so long as other factors weigh in favor of denying declaratory relief. Id. at 423–24. The Fourth Circuit has written that it may be appropriate for a district court to abstain from jurisdiction when judgment is "not necessary or proper at the time under all the circumstances"; "where another court has jurisdiction of the issue"; "where a special statutory remedy has been provided"; or where "another remedy will be more effective or appropriate under the circumstances." Quarles, 92 F.2d at 325–26 (writing that "[i]n these cases it is neither necessary nor proper to issue the declaration").

B.    **West Virginia Law & The Public Service Commission**

The regulatory powers of the Public Service Commission concerning common carriers for the general public are set forth at section 24A-2-3 of the West Virginia Code:

> The commission is vested with power and authority to supervise and regulate all common carriers by motor vehicle and to fix, alter, regulate, and determine just, fair, reasonable, and sufficient rates, joint rates, charges and classifications; to regulate the facilities, accounts, service and safety of operations of each such carrier, to regulate

> operating and time schedules so as to meet the
> reasonable needs of any community[.]

Section 24A-5-1 of the West Virginia Code provides that the
Commission has the power to "originate, establish, promulgate,
change, investigate and enforce" rates and schedules of motor
carriers and the "practices, services and facilities" of motor
carriers. It may remedy any violations following a hearing.
Further, it provides the following:

> [W]henever the commission shall, after
> hearing, find any existing rates, tariffs,
> joint rates, classifications, schedules,
> practices, services or facilities unjust,
> unreasonable, insufficient, or unjustly
> discriminatory or otherwise in violation of
> any of the provisions of this chapter, the
> commission shall, by order, fix and require
> reasonable rates, joint rates, tariffs,
> classifications, schedules, practices,
> services or facilities to be followed or
> established in the future in lieu of those
> found to be unjust, unreasonable, insufficient
> or unjustly discriminatory or otherwise in
> violation of any provisions of law.

Finally, section 24A-7-1 of the West Virginia Code provides
that any "person, firm, association of persons, corporation,
municipality, or county" may present a petition to the Public
Service Commission alleging a violation of Chapter 24A by a motor
carrier. The Supreme Court of Appeals of West Virginia has observed
that complaints made by "customers concerning rates permitted to

be charged or allegations of over-billing should be referred to the Public Service Commission." Syl. Pt. 3, M & J Garage and Towing, Inc. v. W. Va. State Police, 709 S.E.2d 194 (W. Va. 2010).

In M & J Garage and Towing, a towing company brought suit against the West Virginia State Police ("WVSP"). The towing company alleged that the WVSP, after determining that the towing company was overcharging, removed the towing company from its list of available wrecker services. 709 S.E.2d at 195. The towing company had already registered as a common carrier, and chargeable rates had already been established by the Public Service Commission. Id. The court held that the WVSP "acted without authority" in removing the towing company from its list because "complaints made by customers concerning rates permitted to be charged or allegations of over-billing should be referred to the Public Service Commission." Id. at 199–200. It further noted that "the Circuit Court committed error in failing to acknowledge the authority of the Public Service Commission" under West Virginia Code "to supervise and regulate[] . . . the rates, charges, practices and services of common carriers engaged in the business of towing wrecked or disabled motor vehicles." Id. at 199.

### III. DISCUSSION

Here, under all of the circumstances, it is not necessary or proper for this Court to exercise its jurisdiction. Because this

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 11]

Court sits in diversity jurisdiction, it applies West Virginia law. Under West Virginia law, the Public Service Commission is statutorily vested with the authority to remedy the dispute at issue. The Supreme Court of Appeals of West Virginia has also recognized the broad authority of the Public Service Commission to resolve billing disputes such as this. M & J Garage and Towing clearly demonstrates that court's strong preference for the Public Service Commission to handle this brand of dispute. As such, there is a clear state law remedy available.

In examining the factors applied by the Fourth Circuit, even though there is no parallel state action pending,[1] the State of West Virginia's and the Public Service Commission's interests in enforcing their licensing and regulation of the towing industry outweigh this Court's interest in providing an alternative forum to decide the case. Furthermore, the issues presented here can be more efficiently resolved at the state level where administrative

---

[1] As the Fourth Circuit has observed, the potential for a state court action may justify a district court's refusal to entertain a declaratory judgment action. See Ind-Com Elec. Co., 139 F.3d at 423 (citing Golden Eagle, 103 F.3d at 754 (noting "the absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice.") (citations omitted)). The parties' briefing makes clear that other actions in other forums are a distinct possibility if not a certainty. Plaintiffs may have won the race to the courthouse by filing this declaratory judgment action; however, that does not require this Court to entertain their claims where, as is the case here, other forums may be better suited or have more interest in the substantive issues presented.

agencies have expertise and resources for effective resolution of the dispute. West Virginia courts, of course, remain an option as well, considering that neither party is **required** to air their grievances before the Public Service Commission. The Court's point is that other forums are available. Federal courts are courts of limited jurisdiction, and district courts possess great latitude in deciding whether to entertain actions under the Federal Declaratory Judgment Act. After considering these points, along with the general principles of federalism, efficiency, and comity, this Court hereby exercises its discretion and grants Defendant's Motion to Dismiss.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [ECF No. 11] is **GRANTED**. The Court **ORDERS** that this action be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket. It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: May 17, 2019

                              /s/ Thomas S. Kleeh
                              THOMAS S. KLEEH
                              UNITED STATES DISTRICT JUDGE